Allan D. NewDelman (004066)
ALLAN D. NEWDELMAN, P.C.
80 East Columbus Avenue
Phoenix, Arizona 85012
Telephone: (602) 264-4550
Facsimile: (602) 277-0144
Email: ANEWDELMAN@QWESTOFFICE.NET
Attorney for Debtors

UNITED STATES BANKRUPTCY COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>Ryan Timothy Rippy<br>Brande Lynn Rippy<br><br><br><br>Debtors. | In Proceeding Under<br>Chapter 11<br><br>Case No. 09-02023 RTB<br><br>MOTION TO SELL REAL PROPERTY<br>FREE AND CLEAR OF LIENS AND<br>AND ENCUMBRANCES |

Come now the Debtors, Ryan Timothy Rippy and Brande Lynn Rippy, pursuant to 11 U.S.C. §§363(b) and 363(f)(4) and for its Motion to Authorize Sale of Real Property Free and Clear of All Liens and Encumbrances, states as follow:

1.

A Chapter 11 petition was filed on behalf of the Debtors on February 6, 2009. The Debtors have not filed their Chapter 11 Plan of Reorganization as of the date of the filing of this Motion.

2.

The Debtors are the owner of a lot and home located at 202 South Arroyo Drive, Payson AZ 85541 (the "Property"). The legal description of the property is:

Lot 61, Wildwood, According to Map No. 595, Records of Gila County, Arizona

3.

The Debtor listed the value of the Property in Schedule A as $350,000.00.

4.

The Property is subject to a first mortgage lien in favor of National City Mortgage ("NCM")in the approximate amount of $476,000.00. The Property is not subject to any other liens.

5.

The Debtors wish to sell the Property to David J. West and Virginia Cecilia West for the sum of $340,000.00 pursuant to the terms of the sale contract, a copy of which is attached hereto as Exhibit "A."

6.

Prior to obtaining acceptance of the "short sale" from NCM, the Debtors provided NCM with a proposed HUD Statement that indicated that NCM would receive, after payment of closing costs, net proceeds in the amount of $315,166.26. A copy of a letter from National City Mortgage to Ryan Rippy accepting the sale is attached hereto as Exhibit "B".

7.

While the sale will not result in any available funds for the creditors of this estate, the Debtors believe that the sale in vital and necessary to their being able to obtain a fresh start after the completion of this case.

8

The sale of the Property to David J. West and Virginia Cecilia West shall be final pursuant to 11 U.S.C. §363(m).

9.

The Debtor moves the Court to waive Rule 6004(g), requiring a stay until the expiration of 10 days after the entry of the order granting this Motion.

DATED this 1st day of June, 2009.

ALLAN D. NEWDELMAN, P.C.

/s/ Allan D. NewDelman
Allan D. NewDelman, Esq.
Counsel for the Debtors

A copy of the foregoing
mailed this 13th day
of January, 2009, to:

Office of the U.S. Trustee
230 North First Avenue
Suite 204
Phoenix, Arizona 85003

Mark S. Bosco, Esquire
Tiffany & Bosco, P.A.
2525 East Camelback Road
Suite 300
Phoenix, AZ 85016
Counsel for National City Mortgage

Ryan Timothy Rippy and Brande Lynn Rippy
202 South Arroyo Drive
Payson, AZ 85541
Debtors

/s/ R. Scott Graves
R. Scott Graves
Paralegal

# EXHIBIT "A"



# RESIDENTIAL RESALE REAL ESTATE PURCHASE CONTRACT

*The printed portion of this contract has been approved by the Arizona Association of REALTORS® ("AAR"). This is intended to be a binding contract. No representation is made as to the legal validity or adequacy of any provision or the tax consequences thereof. If you desire legal, tax or other professional advice, consult your attorney, tax advisor, insurance agent or professional consultant.*

## 1. PROPERTY

**1a.**
1. **BUYER:** David J. West, Virginia Cecilia West
   BUYER'S NAME(S)

2. **SELLER:** Ryan Rippy, Brande Rippy   or ☐ as identified in section 9c.
   SELLER'S NAME(S)
3. Buyer agrees to buy and Seller agrees to sell the real property with all improvements, fixtures, and appurtenances thereon
4. or incidental thereto, plus the personal property described herein (collectively the "Premises").

**1b.**
5. Premises Address: **202 S. Arroyo Dr.**   Assessor's #: **304-09-068**
6. City: **Payson**   County: **Gila**   AZ, Zip Code: **85541**
7. Legal Description: **WILDWOOD, LOT 61**

**1c.**
8. $ **340,000.00** Full Purchase Price, paid as outlined below
9. $ **1,000.00** Earnest money **TO BE DEPOSITED WITH TITLE COMPANY.**
10. $ **339,000.00 FUNDS FROM BUYER AT CLOSE OF ESCROW.**
11. $
12.

**1d.**
13. **Close of Escrow:** Close of Escrow ("COE") shall occur when the deed is recorded at the appropriate county recorder's office.
14. Buyer and Seller shall comply with all terms and conditions of this Contract, execute and deliver to Escrow Company all
15. closing documents, and perform all other acts necessary in sufficient time to allow COE to occur on
16. ____**May**____ ____**29**____, ____**2009**____ ("COE Date"). If Escrow Company or recorder's office is closed on
    MONTH        DAY        YEAR
17. COE Date, COE shall occur on the next day that both are open for business.

18. Buyer shall deliver to Escrow Company a cashier's check, wired funds or other immediately available funds to pay any down
19. payment, additional deposits or Buyer's closing costs, and instruct the lender, if applicable, to deliver immediately available funds
20. to Escrow Company, in a sufficient amount and in sufficient time to allow COE to occur on COE Date.

**1e.**
21. **Possession:** Seller shall deliver possession, occupancy, access to keys and/or means to operate all locks, mailbox,
22. security system/alarms, and all common area facilities to Buyer at COE or ☐ **N/A**
23. Broker(s) recommend that the parties seek appropriate counsel from insurance, legal, tax, and accounting professionals
24. regarding the risks of pre-possession or post-possession of the Premises.

**1f.**
25. **Addenda Incorporated:** ☐ Assumption and Carryback   ☐ Buyer Contingency   ☐ Domestic Water Well   ☐ HUD forms
26. ☐ H.O.A.   ☐ Lead-Based Paint Disclosure   ☐ Additional Clause   ☐ On-site Wastewater Treatment Facility
27. ☐ Other: **N/A**

**1g.**
28. **Fixtures and Personal Property:** Seller agrees that all existing fixtures on the Premises, and any existing personal
29. property specified herein, shall be included in this sale, including the following:

30. • free-standing range/oven
31. • built-in appliances
32. • light fixtures
33. • ceiling fans
34. • towel, curtain and drapery rods
35. • draperies and other window coverings
36. • attached floor coverings
• flush-mounted speakers
• attached fireplace equipment
• window and door screens, sun screens
• storm windows and doors
• shutters and awnings
• garage door openers and controls
• attached TV/media antennas/satellite dishes
• outdoor landscaping fountains, and lighting
• water-misting systems
• solar systems
• pellet, wood-burning or gas-log stoves
• timers
• mailbox
• storage sheds

Initials: _____   Initials: _____
           SELLER  SELLER                                         BUYER  BUYER

©ARIZONA ASSOCIATION OF REALTORS® Form RPC 5/05
Page 1 of 9

Windermere Majestic Rim Properties 910 E Highway 260 Payson, AZ 85541
Phone: 928-970-2057 140    Fax: 928-474-4722    Maria Cohen                                        Dave & Cecilia
Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

37. If owned by the Seller, the following items also are included in this sale:
38. • pool and spa equipment (including any • security and/or fire systems • water softeners
39. mechanical or other cleaning systems) and/or alarms • water purification systems
40. **Additional existing personal property included in this sale (if checked):** ☒ refrigerator ☐ washer ☐ dryer
41. As described: _____
42. _____
43. ☐ Other: _____
44. _____
45. _____
46. Additional existing personal property included shall not be considered part of the Premises and shall be transferred with no
47. monetary value, and free and clear of all liens or encumbrances.
48. Fixtures and leased items NOT included: **NONE**
49. **IF THIS IS AN ALL CASH SALE, GO TO SECTION 3.**

# 2. FINANCING

2a. 50. **Loan Contingency:** Buyer's obligation to complete this sale is contingent upon Buyer obtaining loan approval for the loan described
51. in the AAR Loan Status Report without conditions no later than COE Date. If Buyer is unable to obtain loan approval without
52. conditions by COE Date, Buyer shall deliver a notice of the inability to obtain loan approval without conditions to Seller or Escrow
53. Company no later than COE Date.

2b. 54. **Unfulfilled Loan Contingency:** This Contract shall be cancelled and Buyer shall be entitled to a return of the Earnest Money if
55. after diligent and good faith effort, Buyer is unable to obtain loan approval without conditions by COE Date. Buyer is aware that
56. failure to have the down payment or other funds due from Buyer necessary to obtain the loan approval without conditions and
57. close this transaction is not an unfulfilled loan contingency. Buyer acknowledges that prepaid items paid separately from earnest
58. money are not refundable.

2c. 59. **Appraisal Contingency:** Buyer's obligation to complete this sale is contingent upon an appraisal of the Premises by an appraiser
60. acceptable to lender for at least the sales price. If the Premises fails to appraise for the sales price, Buyer has five (5) days after notice
61. of the appraised value to cancel this Contract and receive a refund of the Earnest Money or the appraisal contingency shall be waived.

2d. 62. **Loan Status Report:** The AAR Loan Status Report ("LSR") with, at a minimum, the Buyer's Loan Information section
63. completed, describing the current status of the Buyer's proposed loan, is attached hereto and incorporated herein by reference.

2e. 64. **Loan Application:** Unless previously completed, within five (5) days after Contract acceptance, Buyer shall (i) complete, sign
65. and deliver to the lender a loan application with requested disclosures and documentation; (ii) grant lender
66. permission to access Buyer's Trimerged Residential Credit Report; and (iii) pay all required loan application fees.

2f. 67. **Loan Processing During Escrow:** Buyer agrees to diligently work to obtain the loan and will promptly provide the lender with
68. all additional documentation required. Buyer instructs the lender to provide loan status updates to Broker(s) and Seller. **Buyer**
69. **shall sign all loan documents no later than three (3) days prior to the COE Date.**

2g. 70. **Type of Financing:** ☐ Conventional ☐ FHA ☐ VA ☐ Assumption ☐ Seller Carryback ☒ **CASH** _____
71. (If financing is to be other than new financing, see attached addendum.)

2h. 72. **Loan Costs:** Private Mortgage Insurance is required for certain types of loans and shall be paid by Buyer at COE in a
73. manner acceptable to lender. The following may be paid by either party:

74. Discount points shall be paid by: ☐ Buyer ☐ Seller ☐ Other **N/A** _____

75. Discount points shall not exceed: **N/A** total points (Does not include loan origination fee)

76. A.L.T.A. Lender Title Insurance Policy shall be paid by ☒ Buyer ☐ Seller

77. Loan Origination Fee (Not to exceed **N/A** % of loan amount) shall be paid by ☐ Buyer ☐ Seller

78. Appraisal Fee, when required by lender, shall be paid by ☒ Buyer ☐ Seller ☐ Other _____

2i. 79. **Other Loan Costs:** In the event of an FHA or VA loan, Seller agrees to pay up to $ **NONE** _____ of loan
80. costs not permitted to be paid by the Buyer, in addition to the other costs Seller has agreed to pay herein. In addition, for VA
81. loans, Seller agrees to pay the escrow fee. All other costs of obtaining the loan shall be paid by the Buyer.

**2j.** 82. **Changes:** Buyer shall immediately notify Seller of any changes in the loan program, financing terms, or lender described in
83. the LSR and shall only make any such changes without the prior written consent of Seller if such changes do not adversely
84. affect Buyer's ability to obtain loan approval without conditions, increase Seller's closing costs, or delay COE.

**2k.** 85. **FHA Notice (FHA Buyer Initials Required):** HUD does not warrant the condition of the property. By initialing below, Buyer acknowl-
86. edges receipt of Form **HUD-92564-CN, "For Your Protection: Get a Home Inspection."** Buyer further acknowledges that such
87. form was signed at or before the Contract date. Signed HUD-92564-CN is attached and made a part of this Purchase Contract.
88.                                                               (FHA BUYER'S INITIALS REQUIRED)     _/s/_     _/s/_
                                                                                                                                                                 BUYER        BUYER

## 3. TITLE AND ESCROW

**3a.** 89. **Escrow:** This Contract shall be used as escrow instructions. The Escrow Company employed by the parties to carry out the
90. terms of this Contract shall be:
91.               **Pioneer Title Agency**                   **(928) 474-3235**
                                *ESCROW/TITLE COMPANY*                                 PHONE FAX

**3b.** 92. **Title and Vesting:** Buyer will take title as determined before COE. Taking title may have significant legal, estate planning
93. and tax consequences. Buyer should obtain legal and tax advice.

**3c.** 94. **Title Commitment and Title Insurance:** Escrow Company is hereby instructed to obtain and deliver to Buyer and Seller
95. directly, addressed pursuant to 8t and 9c or as otherwise provided, a Commitment for Title Insurance together with
96. complete and legible copies of all documents that will remain as exceptions to Buyer's policy of Title Insurance ("Title
97. Commitment"), including but not limited to Conditions, Covenants and Restrictions ("CC&Rs"); deed restrictions; and
98. easements. Buyer shall have five (5) days after receipt of the Title Commitment and after receipt of notice of any
99. subsequent exceptions to provide notice to Seller of any items disapproved. Seller shall convey title by general warranty
100. deed. Buyer shall be provided at Seller's expense an American Land Title Association ("ALTA") Homeowner's Title
101. Insurance Policy, or if not available, an ALTA Residential Title Insurance Policy ("Plain Language"/"1-4 units") or, if not
102. available, a Standard Owner's Title Insurance Policy, showing title vested in Buyer. Buyer may acquire extended coverage
103. at Buyer's own additional expense.

**3d.** 104. **Additional Instructions:** (i) Escrow Company shall promptly furnish notice of pending sale that contains the name and
105. address of the Buyer to any homeowner's association in which the Premises is located. (ii) If the Escrow Company is also
106. acting as the title agency but is not the title insurer issuing the title insurance policy, Escrow Company shall deliver to the
107. Buyer and Seller, upon deposit of funds, a closing protection letter from the title insurer indemnifying the Buyer and Seller for
108. any losses due to fraudulent acts or breach of escrow instructions by the Escrow Company. (iii) All documents necessary to
109. close this transaction shall be executed promptly by Seller and Buyer in the standard form used by Escrow Company. Escrow
110. Company shall modify such documents to the extent necessary to be consistent with this Contract. (iv) Escrow Company
111. fees, unless otherwise stated herein, shall be allocated equally between Seller and Buyer. (v) Escrow Company shall send
112. to all parties and Broker(s) copies of all notices and communications directed to Seller, Buyer and Broker(s). (vi) Escrow
113. Company shall provide Broker(s) access to escrowed materials and information regarding the escrow. (vii) If an Affidavit of
114. Disclosure is provided, Escrow Company shall record the Affidavit at COE.

**3e.** 115. **Tax Prorations:** Real property taxes payable by the Seller shall be prorated to COE based upon the latest tax information available.

**3f.** 116. **Release of Earnest Money:** In the event of a dispute between Buyer and Seller regarding any Earnest Money deposited with Escrow
117. Company, Buyer and Seller authorize Escrow Company to release Earnest Money pursuant to the terms and conditions of this Contract
118. in its sole and absolute discretion. Buyer and Seller agree to hold harmless and indemnify Escrow Company against any claim, action
119. or lawsuit of any kind, and from any loss, judgment, or expense, including costs and attorney fees, arising from or relating in any way to
120. the release of Earnest Money.

**3g.** 121. **Prorations of Assessments and Fees:** All assessments and fees that are not a lien as of the COE, including homeowner's
122. association fees, rents, irrigation fees, and, if assumed, insurance premiums, interest on assessments, interest on
123. encumbrances, and service contracts, shall be prorated as of COE or ☐ Other: **N/A**

**3h.** 124. **Assessment Liens:** The amount of any assessment, other than homeowner's association assessments, that is a lien as of
125. the COE, shall be ☒ paid in full by Seller ☐ prorated and assumed by Buyer. Any assessment that becomes a lien after
126. COE is the Buyer's responsibility.

**3i.** 127. **IRS and FIRPTA Reporting:** Seller agrees to comply with IRS reporting requirements. If applicable, Seller agrees to
128. complete, sign, and deliver to Escrow Company a certificate indicating whether Seller is a foreign person or a non-resident
129. alien pursuant to the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer and Seller acknowledge that if the Seller
130. is a foreign person, the Buyer must withhold a tax equal to 10% of the purchase price, unless an exemption applies.

Initials: _/s/_ SELLER _/s/_ SELLER      ©ARIZONA ASSOCIATION OF REALTORS® Form RPC 5/05      Initials: _/s/_ BUYER _/s/_ BUYER

Page 3 of 9
Produced with ZipForm® by zipLogix, 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com      Dave & Cecilia

# 4. DISCLOSURES

**4a.** 131. **Seller Property Disclosure Statement ("SPDS")**: Seller shall deliver a completed AAR SPDS form to the Buyer within five
132. (5) days after Contract acceptance. Buyer shall provide notice of any SPDS items disapproved within the Inspection Period
133. or five (5) days after receipt of the SPDS, whichever is later.

**4b.** 134. **Insurance Claims History**: Seller shall deliver to Buyer a written five-year insurance claims history regarding Premises (or
135. a claims history for the length of time Seller has owned the Premises if less than five years) from Seller's insurance
136. company or an insurance support organization or consumer reporting agency, or if unavailable from these sources, from
137. Seller, within five (5) days after Contract acceptance. (Seller may obscure any reference to date of birth or social
138. security number from the document). Buyer shall provide notice of any items disapproved within the Inspection Period or
139. five (5) days after receipt of the claims history, whichever is later.

**4c.** 140. **Lead-Based Paint Disclosure**: If the Premises were built prior to 1978, the Seller shall: (i) notify the Buyer of any known
141. lead-based paint ("LBP") or LBP hazards in the Premises; (ii) provide the Buyer with any LBP risk assessments or
142. inspections of the Premises in the Seller's possession; (iii) provide the Buyer with the Disclosure of Information on
143. Lead-based Paint and Lead-based Paint Hazards, and any report, records, pamphlets, and/or other materials referenced
144. therein, including the pamphlet "Protect Your Family from Lead in Your Home" (collectively "LBP Information"). Buyer shall return
145. a signed copy of the Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards to Seller prior to COE.

146. ☐ LBP Information was provided prior to Contract acceptance and Buyer acknowledges the opportunity to conduct LBP risk
147. assessments or inspections during Inspection Period.
148. ☐ Seller shall provide LBP Information within five (5) days after Contract acceptance. Buyer may within ten (10) days or
149. ___N/A___ days after receipt of the LBP Information conduct or obtain a risk assessment or inspection of the Premises for
150. the presence of LBP or LBP hazards ("Assessment Period"). Buyer may within five (5) days after receipt of the LBP
151. Information or five (5) days after expiration of the Assessment Period cancel this Contract.

152. If Premises were constructed prior to 1978, **BUYER'S INITIALS REQUIRED** _____ _____
       BUYER   BUYER
153. If Premises were constructed in 1978 or later, **BUYER'S INITIALS REQUIRED** _Ad_ _Jr(_
       BUYER   BUYER

**4d.** 154. **Affidavit of Disclosure**: If the Premises is located in an unincorporated area of the county, and five or fewer parcels of
155. property other than subdivided property are being transferred, the Seller shall deliver a completed Affidavit of Disclosure in
156. the form required by law to the Buyer within five (5) days after Contract acceptance. Buyer shall provide notice of any Affidavit
157. of Disclosure items disapproved within the Inspection Period or five (5) days after receipt of the Affidavit of Disclosure,
158. whichever is later.

**4e.** 159. **Changes During Escrow**: Seller shall immediately notify Buyer of any changes in the Premises or disclosures made
160. herein, in the SPDS, or otherwise. Such notice shall be considered an update of the SPDS. Unless Seller is already
161. obligated by Section 5a, or otherwise by this Contract or any amendments hereto, to correct or repair the changed item
162. disclosed, Buyer shall be allowed five (5) days after delivery of such notice to provide notice of disapproval to Seller.

# 5. WARRANTIES

**5a.** 163. **Seller Warranties**: Seller warrants and shall maintain and repair the Premises so that, at the earlier of possession or COE: (i) all
164. heating, cooling, mechanical, plumbing, and electrical systems (including swimming pool and/or spa, motors, filter
165. systems, cleaning systems, and heaters, if any), free-standing range/oven, and built-in appliances will be in working
166. condition; (ii) all other agreed upon repairs and corrections will be completed pursuant to Section 6j; (iii) the Premises,
167. including all additional existing personal property included in the sale, will be in substantially the same condition as on the date of
168. Contract acceptance; and (iv) all personal property not included in the sale and all debris will be removed from the Premises.

**5b.** 169. **Warranties that Survive Closing**: Seller warrants that Seller has disclosed to Buyer and Broker(s) all material latent defects
170. and any information concerning the Premises known to Seller, excluding opinions of value, which materially and adversely
171. affect the consideration to be paid by Buyer. Prior to the COE, Seller warrants that payment in full will have been made for
172. all labor, professional services, materials, machinery, fixtures, or tools furnished within the 150 days immediately preceding
173. the COE in connection with the construction, alteration, or repair of any structure on or improvement to the Premises. Seller
174. warrants that the information regarding connection to a sewer system or on-site wastewater treatment facility (conventional
175. septic or alternative) is correct to the best of Seller's knowledge.



**5c.** 176. **Buyer Warranties:** Buyer warrants that Buyer has disclosed to Seller any information that may materially and adversely affect
177. the Buyer's ability to close escrow or complete the obligations of this Contract. At the earlier of possession of the Premises or
178. COE, Buyer warrants to Seller that Buyer has conducted all desired independent inspections and investigations and accepts
179. the Premises. **Buyer warrants that Buyer is not relying on any verbal representations concerning the Premises**
180. **except disclosed as follows:** NONE
181. _____

# 6. DUE DILIGENCE

**6a.** 182. **Inspection Period:** Buyer's Inspection Period shall be ten (10) days or _____N/A_____ days after Contract
183. acceptance. During the Inspection Period, Buyer, at Buyer's expense, shall (i) conduct all desired physical, environmental,
184. and other types of inspections and investigations to determine the value and condition of the Premises; (ii) make inquiries
185. and consult government agencies, lenders, insurance agents, architects, and other appropriate persons and entities
186. concerning the suitability of the Premises and the surrounding area; (iii) investigate applicable building, zoning, fire, health,
187. and safety codes to determine any potential hazards, violations or defects in the Premises; and (iv) verify any material multiple
188. listing service ("MLS") information. If the presence of sex offenders in the vicinity or the occurrence of a disease, natural death,
189. suicide, homicide or other crime on or in the vicinity is a material matter to the Buyer, it must be investigated by the Buyer
190. during the Inspection Period. Buyer shall keep the Premises free and clear of liens, shall indemnify and hold Seller
191. harmless from all liability, claims, demands, damages, and costs, and shall repair all damages arising from the inspections.
192. Buyer shall provide Seller and Broker(s) upon receipt, at no cost, copies of all inspection reports concerning the Premises
193. obtained by Buyer. Buyer is advised to consult the Arizona Department of Real Estate *Buyer Advisory* provided by AAR to
194. assist in Buyer's due diligence inspections and investigations.

**6b.** 195. **Square Footage: BUYER IS AWARE THAT ANY REFERENCE TO THE SQUARE FOOTAGE OF THE PREMISES, BOTH**
196. **THE REAL PROPERTY (LAND) AND IMPROVEMENTS THEREON, IS APPROXIMATE. IF SQUARE FOOTAGE IS A**
197. **MATERIAL MATTER TO THE BUYER, IT MUST BE INVESTIGATED DURING THE INSPECTION PERIOD.**

**6c.** 198. **Wood-Destroying Organism or Insect Inspection: IF CURRENT OR PAST WOOD-DESTROYING ORGANISMS OR**
199. **INSECTS (SUCH AS TERMITES) ARE A MATERIAL MATTER TO THE BUYER, THESE ISSUES MUST BE**
200. **INVESTIGATED DURING THE INSPECTION PERIOD.** The Buyer shall order and pay for all wood-destroying organism or
201. insect inspections performed during the Inspection Period. If the lender requires an updated Wood-Destroying Organism or
202. Insect Inspection Report prior to COE, it will be performed at Buyer's expense.

**6d.** 203. **Flood Hazard:** Flood hazard designations or the cost of flood hazard insurance shall be determined by Buyer during the
204. Inspection Period. If the Premises are situated in an area identified as having any special flood hazards by any
205. governmental entity, the lender may require the purchase of flood hazard insurance. Special flood hazards may also affect
206. the ability to encumber or improve the Premises.

**6e.** 207. **Insurance: IF HOMEOWNER'S INSURANCE IS A MATERIAL MATTER TO THE BUYER, BUYER SHALL APPLY FOR**
208. **AND OBTAIN WRITTEN CONFIRMATION OF THE AVAILABILITY AND COST OF HOMEOWNER'S INSURANCE FOR**
209. **THE PREMISES FROM BUYER'S INSURANCE COMPANY DURING THE INSPECTION PERIOD.** Buyer understands that
210. any homeowner's, fire, casualty, or other insurance desired by Buyer or required by lender should be in place at COE.

**6f.** 211. **Sewer or On-site Wastewater Treatment System:** The Premises are connected to a:
212.  [x] sewer system;  [ ] septic system;  [ ] alternative system.

213. **IF A SEWER CONNECTION IS A MATERIAL MATTER TO THE BUYER, IT MUST BE INVESTIGATED DURING THE**
214. **INSPECTION PERIOD.** If the Premises are served by a septic or alternative system, the AAR On-site Wastewater Treatment
215. Facility Addendum is incorporated herein by reference.
216.                                         **(BUYER'S INITIALS REQUIRED)** ___BUYER___ ___BUYER___

**6g.** 217. **Swimming Pool Barrier Regulations:** During the Inspection Period, Buyer agrees to investigate all applicable state,
218. county, and municipal Swimming Pool barrier regulations and agrees to comply with and pay all costs of compliance
219. with said regulations prior to occupying the Premises, unless otherwise agreed in writing. If the Premises contains a Swimming
220. Pool, Buyer acknowledges receipt of the Arizona Department of Health Services approved private pool safety notice.
221.                                         **(BUYER'S INITIALS REQUIRED)** ___BUYER___ ___BUYER___

Initials: ___SELLER___ ___SELLER___     ©ARIZONA ASSOCIATION OF REALTORS® Form RPC 5/05     Initials: ___BUYER___ ___BUYER___

Page 5 of 9
Produced with ZipForm® by zipLogix. 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com     Dave & Cecilia

6h. 222. **BUYER ACKNOWLEDGMENT:** BUYER RECOGNIZES, ACKNOWLEDGES, AND AGREES THAT BROKER(S) ARE NOT
223. QUALIFIED, NOR LICENSED, TO CONDUCT DUE DILIGENCE WITH RESPECT TO THE PREMISES OR THE
224. SURROUNDING AREA. BUYER IS INSTRUCTED TO CONSULT WITH QUALIFIED LICENSED PROFESSIONALS TO
225. ASSIST IN BUYER'S DUE DILIGENCE EFFORTS. BECAUSE CONDUCTING DUE DILIGENCE WITH RESPECT TO THE
226. PREMISES AND THE SURROUNDING AREA IS BEYOND THE SCOPE OF THE BROKER'S EXPERTISE AND
227. LICENSING, BUYER EXPRESSLY RELEASES AND HOLDS HARMLESS BROKER(S) FROM LIABILITY FOR ANY
228. DEFECTS OR CONDITIONS THAT COULD HAVE BEEN DISCOVERED BY INSPECTION OR INVESTIGATION.

229. **(BUYER'S INITIALS REQUIRED)** ___[initials]___ ___[initials]___
                                              BUYER         BUYER

6i. 230. **Inspection Period Notice:** Prior to expiration of the Inspection Period, Buyer shall deliver to Seller a signed notice of any
231. items disapproved. AAR's Buyer's Inspection Notice and Seller's Response form is available for this purpose. Buyer shall
232. conduct all desired inspections and investigations prior to delivering such notice to Seller and all Inspection Period items
233. disapproved shall be provided in a single notice.

6j. 234. **Buyer Disapproval:** If Buyer, in Buyer's sole discretion, disapproves of items as allowed herein, Buyer shall deliver to Seller
235. notice of the items disapproved and state in the notice that Buyer elects to either:
236. (1) immediately cancel this Contract and all Earnest Money shall be released to Buyer, or
237. (2) provide the Seller an opportunity to correct the items disapproved, in which case:
238. (a) Seller shall respond in writing within five (5) days or __N/A__ days after delivery to Seller of Buyer's notice of
239. items disapproved. Seller's failure to respond to Buyer in writing within the specified time period shall
240. conclusively be deemed Seller's refusal to correct any of the items disapproved.
241. **(b) If Seller agrees in writing to correct items disapproved, Seller shall correct the items, complete any**
242. **repairs in a workmanlike manner and deliver any paid receipts evidencing the corrections and repairs**
243. **to Buyer three (3) days or __N/A__ days prior to COE Date.**
244. (c) If Seller is unwilling or unable to correct any of the items disapproved, Buyer may cancel
245. this Contract within five (5) days after delivery of Seller's response or after expiration of the time for
246. Seller's response, whichever occurs first, and all Earnest Money shall be released to Buyer. If Buyer does
247. not cancel this Contract within the five (5) days as provided, Buyer shall close escrow without correction
248. of those items that Seller has not agreed in writing to correct.

249. VERBAL DISCUSSIONS WILL NOT EXTEND THESE TIME PERIODS. Only a written agreement signed by both parties will
250. extend response times or cancellation rights.

251. BUYER'S FAILURE TO GIVE NOTICE OF DISAPPROVAL OF ITEMS OR CANCELLATION OF THIS CONTRACT WITHIN
252. THE SPECIFIED TIME PERIOD SHALL CONCLUSIVELY BE DEEMED BUYER'S ELECTION TO PROCEED WITH THE
253. TRANSACTION WITHOUT CORRECTION OF ANY DISAPPROVED ITEMS.

6k. 254. **Notice of Non-Working Warranted Items:** Buyer shall provide Seller with notice of any non-working warranted item(s) of
255. which Buyer becomes aware during the Inspection Period or the Seller warranty for that item(s) shall be waived. Delivery of
256. such notice shall not affect Seller's obligation to maintain or repair the warranted item(s).

6l. 257. **Home Warranty Plan:** Buyer and Seller are advised to investigate the various home warranty plans available for purchase.
258. The parties acknowledge that different home warranty plans have different coverage options, exclusions, limitations, service
259. fees and most plans exclude pre-existing conditions.

260. [x] A Home Warranty Plan will be ordered by [x] Buyer or [ ] Seller with the following optional coverage
261. __Extended HV/AC__, to be issued by __TBD__ at a cost not to exceed
262. $__500.00__, to be paid for by [x] Buyer [ ] Seller
263. [ ] Buyer declines the purchase of a Home Warranty Plan.

6m. 264. **Walkthrough(s):** Seller grants Buyer and Buyer's inspector(s) reasonable access to conduct walkthrough(s) of the Premises for the
265. purpose of satisfying Buyer that any corrections or repairs agreed to by the Seller have been completed, warranted items are in
266. working condition and that the Premises is in substantially the same condition as of the date of Contract acceptance. If Buyer does
267. not conduct such walkthrough(s), Buyer releases Seller and Broker(s) from liability for any defects that could have been discovered.

6n. 268. **Seller's Responsibility Regarding Inspections and Walkthrough(s):** Seller shall make the Premises available for all
269. inspections and walkthrough(s) upon reasonable notice by Buyer. Seller shall, at Seller's expense, have all utilities on,
270. including any propane, until COE to enable Buyer to conduct these inspections and walkthrough(s).

# 7. REMEDIES

**7a.** 271. **Cure Period:** A party shall have an opportunity to cure a potential breach of this Contract. If a party fails to comply with any
272. provision of this Contract, the other party shall deliver a notice to the non-complying party specifying the non-compliance. If
273. the non-compliance is not cured within three (3) days after delivery of such notice ("Cure Period"), the failure to comply shall
274. become a breach of Contract.

**7b.** 275. **Breach:** In the event of a breach of Contract, the non-breaching party may cancel this Contract and/or proceed against the
276. breaching party in any claim or remedy that the non-breaching party may have in law or equity, subject to the Alternative
277. Dispute Resolution obligations set forth herein. In the case of the Seller, because it would be difficult to fix actual damages
278. in the event of Buyer's breach, the Earnest Money may be deemed a reasonable estimate of damages and Seller may, at
279. Seller's option, accept the Earnest Money as Seller's sole right to damages; and in the event of Buyer's breach arising from
280. Buyer's failure to deliver the notice required by Section 2a, or Buyer's inability to obtain loan approval due to the waiver of
281. the appraisal contingency pursuant to Section 2c, Seller shall exercise this option and accept the Earnest Money as Seller's
282. sole right to damages. An unfulfilled contingency is not a breach of Contract.

**7c.** 283. **Alternative Dispute Resolution ("ADR"):** Buyer and Seller agree to mediate any dispute or claim arising out of or relating
284. to this Contract in accordance with the REALTORS® Dispute Resolution System, or as otherwise agreed. All mediation costs
285. shall be paid equally by the parties. In the event that mediation does not resolve all disputes or claims, the unresolved
286. disputes or claims shall be submitted for binding arbitration. In such event, the parties shall agree upon an arbitrator and
287. cooperate in the scheduling of an arbitration hearing. If the parties are unable to agree on an arbitrator, the dispute shall be
288. submitted to the American Arbitration Association ("AAA") in accordance with the AAA Arbitration Rules for the Real Estate
289. Industry. The decision of the arbitrator shall be final and nonappealable. Judgment on the award rendered by the arbitrator
290. may be entered in any court of competent jurisdiction. Notwithstanding the foregoing, either party may opt out of binding
291. arbitration within thirty (30) days after the conclusion of the mediation conference by notice to the other and in such event
292. either party shall have the right to resort to court action.

**7d.** 293. **Exclusions from ADR:** The following matters are excluded from the requirement for ADR hereunder: (i) any action brought
294. in the Small Claims Division of an Arizona Justice Court (up to $2,500) so long as the matter is not thereafter transferred or
295. removed from the small claims division; (ii) judicial or nonjudicial foreclosure or other action or proceeding to enforce a deed
296. of trust, mortgage, or agreement for sale; (iii) an unlawful entry or detainer action; (iv) the filing or enforcement of a
297. mechanic's lien; or (v) any matter that is within the jurisdiction of a probate court. Further, the filing of a judicial action to
298. enable the recording of a notice of pending action ("lis pendens"), or order of attachment, receivership, injunction, or other
299. provisional remedies shall not constitute a waiver of the obligation to submit the claim to ADR, nor shall such action
300. constitute a breach of the duty to mediate or arbitrate.

**7e.** 301. **Attorney Fees and Costs:** The prevailing party in any dispute or claim between Buyer and Seller arising out of or relating
302. to this Contract shall be awarded their reasonable attorney fees and costs. Costs shall include, without limitation, attorney
303. fees, expert witness fees, fees paid to investigators, and arbitration costs.

# 8. ADDITIONAL TERMS AND CONDITIONS

**8a.** 304. ____
305. ____
306. ____
307. ____
308. ____
309. ____
310. ____
311. ____
312. ____
313. ____
314. ____
315. ____

Initials: _____ SELLER _____ SELLER    ©ARIZONA ASSOCIATION OF REALTORS® Form RPC 5/05    Initials: _____ BUYER _____ BUYER

Page 7 of 9

**8b. 316. Risk of Loss:** If there is any loss or damage to the Premises between the date of Contract acceptance and COE or
317. possession, whichever is earlier, by reason of fire, vandalism, flood, earthquake, or act of God, the risk of loss shall be on
318. the Seller, provided, however, that if the cost of repairing such loss or damage would exceed ten percent (10%) of the
319. purchase price, either Seller or Buyer may elect to cancel the Contract.

**8c. 320. Permission:** Buyer and Seller grant Broker(s) permission to advise the public of this Contract.

**8d. 321. Arizona Law:** This Contract shall be governed by Arizona law and jurisdiction is exclusively conferred on the State of Arizona.

**8e. 322. Time is of the Essence:** The parties acknowledge that time is of the essence in the performance of the obligations
323. described herein.

**8f. 324. Compensation:** Seller and Buyer acknowledge that Broker(s) shall be compensated for services rendered as previously agreed by
325. separate written agreement(s), which shall be delivered by Broker(s) to Escrow Company for payment at COE, if not previously paid.
326. If Seller is obligated to pay Broker(s), this Contract shall constitute an irrevocable assignment of Seller's proceeds at COE. If Buyer
327. is obligated to pay Broker(s), payment shall be collected from Buyer as a condition of COE. COMMISSIONS PAYABLE FOR THE
328. SALE, LEASING, OR MANAGEMENT OF PROPERTY ARE NOT SET BY ANY BOARD OR ASSOCIATION OF REALTORS®, OR
329. MULTIPLE LISTING SERVICE, OR IN ANY MANNER OTHER THAN BETWEEN THE BROKER AND CLIENT.

**8g. 330. Copies and Counterparts:** A fully executed facsimile or electronic copy of the Contract shall be treated as an original Contract. This Contract
331. and any other documents required by this Contract may be executed by facsimile or other electronic means and in any number of counterparts,
332. which shall become effective upon delivery as provided for herein, except that the Lead-Based Paint Disclosure Statement may not be signed
333. in counterpart. All counterparts shall be deemed to constitute one instrument, and each counterpart shall be deemed an original.

**8h. 334. Days:** All references to days in this Contract shall be construed as calendar days and a day shall begin at 12:00 a.m. and end at 11:59 p.m.

**8i. 335. Calculating Time Periods:** In computing any time period prescribed or allowed by this Contract, the day of the act or event
336. from which the time period begins to run is not included and the last day of the time period is included. Contract acceptance
337. occurs on the date that the signed Contract (and any incorporated counter offer) is delivered to and received by the
338. appropriate Broker. Acts that must be performed three days prior to the COE Date must be performed three full days prior
339. (i.e., if COE Date is Friday the act must be performed by 11:59 p.m. on Monday).

**8j. 340. Entire Agreement:** This Contract, and any addenda and attachments, shall constitute the entire agreement between Seller and
341. Buyer, shall supersede any other written or oral agreements between Seller and Buyer and can be modified only by a writing
342. signed by Seller and Buyer. The failure to initial any page of this Contract shall not affect the validity or terms of this Contract.

**8k. 343. Subsequent Offers:** Buyer acknowledges that Seller has the right to accept subsequent offers until COE. Seller understands that
344. any subsequent offer accepted by the Seller must be a backup offer contingent on the cancellation of this Contract.

**8l. 345. Cancellation:** A party who wishes to exercise the right of cancellation as allowed herein may cancel this Contract by
346. delivering notice stating the reason for cancellation to the other party or to the Escrow Company. Cancellation shall become
347. effective immediately upon delivery of the cancellation notice.

**8m. 348. Notice:** Unless otherwise provided, delivery of all notices and documentation required or permitted hereunder shall be in
349. writing and deemed delivered and received when (i) hand-delivered, (ii) sent via facsimile transmission, (iii) sent via
350. electronic mail, if email addresses are provided herein, or (iv) sent by recognized overnight courier service, and addressed
351. to Buyer as indicated in Section 8r, to Seller as indicated in Section 9a and to the Escrow Company indicated in Section 3a.

**8n. 352. Earnest Money:** Earnest Money is in the form of: [x] Personal Check [ ] Other: __N/A__
353. If applicable, Earnest Money has been received by Broker named in Section 8r and upon acceptance of this offer will be
354. deposited with: [x] Escrow Company [ ] Broker's Trust Account

**8o. 355. Release of Broker(s):** **Seller and Buyer hereby expressly release, hold harmless and indemnify Broker(s) in this
356. transaction from any and all liability and responsibility regarding financing, the condition, square footage, lot lines,
357. boundaries, value, rent rolls, environmental problems, sanitation systems, roof, wood infestation, building codes,
358. governmental regulations, insurance or any other matter relating to the value or condition of the Premises.**
359. (BUYER'S INITIALS REQUIRED) __AV__ __[initials]__
   BUYER   BUYER

**8p. 360. Terms of Acceptance:** This offer will become a binding Contract when acceptance is signed by Seller and
361. a signed copy delivered in person, by mail, facsimile or electronically, and received by Broker named in Section 8r
362. by __March 17__, __2009__ at __12:00__ [ ] a.m. [x] p.m., Mountain Standard Time. Buyer
363. may withdraw this offer at any time prior to receipt of Seller's signed acceptance. If no signed acceptance is received by this
364. date and time, this offer shall be deemed withdrawn and the Buyer's Earnest Money shall be returned.

**8q. 365.** THIS CONTRACT CONTAINS NINE PAGES EXCLUSIVE OF ANY ADDENDA AND ATTACHMENTS. PLEASE ENSURE THAT
366. YOU HAVE RECEIVED AND READ ALL NINE PAGES OF THIS OFFER AS WELL AS ANY ADDENDA AND ATTACHMENTS.

Initials: __[initials]__ SELLER SELLER   ©ARIZONA ASSOCIATION OF REALTORS® Form RPC 5/05   Initials: __AV__ __[initials]__ BUYER BUYER

Produced with ZipForm® by zipLogix, 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com     Dave & Cecilia

**8r. 367. Broker on behalf of Buyer:**

368. _Maria R. Cohen_ PRINT SALESPERSON'S NAME  AGENT CODE  _Windermere Majestic Rim Properties_ PRINT FIRM NAME  FIRM CODE
369. _610 E. Highway 260_ FIRM ADDRESS  _Payson_  _AZ_ STATE  _85541_ ZIP CODE
370. TELEPHONE  _(928) 474-4722_ FAX  _mariacohen@windermere.com_ EMAIL

**8s. 371. Agency Confirmation:** The Broker named in Section 8r above is the agent of (check one):
372. [x] the Buyer;  ☐ the Seller; or  ☐ both the Buyer and Seller

**8t. 373. The undersigned** agree to purchase the Premises on the terms and conditions herein stated and acknowledge receipt of a
374. copy hereof including the Buyer Attachment.

375. _[signature]_ BUYER'S SIGNATURE  _3/16/09_ MO/DA/YR    _Virginia Cecilia West_ BUYER'S SIGNATURE  _3/16/09_ MO/DA/YR
David J. West                                          Virginia Cecilia West
376. _2021 Kingsforth Dr._ ADDRESS                      _2021 Kingsforth Dr._ ADDRESS
377. _Fallston, MD 21047_ CITY, STATE, ZIPCODE          _Fallston, MD 85541_ CITY, STATE, ZIPCODE

# 9. SELLER ACCEPTANCE

**9a. 378. Broker on behalf of Seller:**

379. _Jeff K. Rippy_ PRINT SALESPERSON'S NAME  AGENT CODE  _PRUDENTIAL, AZ. Properties_ PRINT FIRM NAME  FIRM CODE
380. _609 S. BEELINE HWY_ FIRM ADDRESS  _Payson_  _AZ_ STATE  _85541_ ZIP CODE
381. _928-474-2337_ TELEPHONE  _928-474-8087_ FAX  _TANGENT@Q.COM_ EMAIL

**9b. 382. Agency Confirmation:** The Broker named in Section 9a above is the agent of (check one):
383. [x] the Seller; or  ☐ both the Buyer and Seller

**9c. 384. The undersigned agree to sell the Premises on the terms and conditions herein stated, acknowledge receipt of a
385. copy hereof and grant permission to Broker named on Section 9a to deliver a copy to Buyer.**

386. ☐ Counter Offer is attached, and is incorporated herein by reference. Seller should sign both this offer and the Counter Offer.
387.    If there is a conflict between this offer and the Counter Offer, the provisions of the Counter Offer shall be controlling.

388. _[signature]_ SELLER'S SIGNATURE  _3/25/09_ MO/DA/YR    _[signature]_ SELLER'S SIGNATURE  _3/25/09_ MO/DA/YR
389. _Ryan Rippy_ SELLER'S NAME PRINTED                  _Brande Rippy_ SELLER'S NAME PRINTED
390. _202 S. Arroyo Dr._ ADDRESS                         _202 S. Arroyo Dr._ ADDRESS
391. _Payson, AZ 85541_ CITY, STATE, ZIPCODE             _Payson, AZ 85541_ CITY, STATE, ZIPCODE

392. ☐ **OFFER REJECTED BY SELLER:** _____ MONTH _____ DAY _____ YEAR _____ SELLER'S INITIALS

**For Broker Use Only:**
Brokerage File/Log No. _____  Manager's Initials _____  Broker's Initials _____  Date _____ MO/DA/YR

This form is available for use by the entire real estate industry. The use of this form is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark that may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics.
©Arizona Association of REALTORS® 2005 • This form is available through your local association of REALTORS® • Form RPC 5/05

Initials: _[initials]_ SELLER / _[initials]_ SELLER   ©ARIZONA ASSOCIATION OF REALTORS® Form RPC 5/05   Initials: _[initials]_ BUYER / _[initials]_ BUYER

Windermere Majestic Rim Properties

# REAL ESTATE AGENCY DISCLOSURE AND ELECTION

Document updated: January 2009



The pre-printed portion of this form has been drafted by the Arizona Association of REALTORS®. Any change in the pre-printed language of this form must be made in a prominent manner. No representations are made as to the legal validity, adequacy and/or effects of any provision, Including tax consequences thereof. If you desire legal, tax or other professional advice, please consult your attorney, tax advisor or professional consultant.

 

1. Firm Name ("Broker") _____ **Windermere Majestic Rim Properties** _____

2. acting through _____ **Maria R. Cohen** _____ hereby makes the following disclosure.
   LICENSEE'S NAME

## DISCLOSURE

3. Before a **Seller** or **Landlord** (hereinafter referred to as "Seller") or a **Buyer** or **Tenant** (hereinafter referred to as "Buyer") enters into
4. a discussion with a real estate broker or licensee affiliated with a broker, the Seller and the Buyer should understand what type of agency
5. relationship or representation they will have with the broker in the transaction.

6. **I. Buyer's Broker:** A broker other than the Seller's broker can agree with the Buyer to act as the broker for the Buyer. In these
7. situations, the Buyer's broker is not representing the Seller, even if the Buyer's broker is receiving compensation for services
8. rendered, either in full or in part, from the Seller or through the Seller's broker:
9. a) A Buyer's broker has the fiduciary duties of loyalty, obedience, disclosure, confidentiality, and accounting in dealings with the Buyer.
10. b) Other potential Buyers represented by broker may consider, make offers on, or acquire an interest in the same or similar
11. properties as Buyer is seeking.

12. **II. Seller's Broker:** A broker under a listing agreement with the Seller acts as the broker for the Seller only:
13. a) A Seller's broker has the fiduciary duties of loyalty, obedience, disclosure, confidentiality, and accounting in dealings with the Seller.
14. b) Other potential Sellers represented by broker may list properties that are similar to the property that Seller is selling.

15. **III. Broker Representing both Seller and Buyer (Limited Representation):** A broker, either acting directly or through one or more
16. licensees within the same brokerage firm, can legally represent both the Seller and the Buyer in a transaction, but only with the
17. knowledge and informed consent of both the Seller and the Buyer. In these situations, the Broker, acting through its licensee(s),
18. represents both the Buyer and the Seller, with limitations of the duties owed to the Buyer and the Seller:
19. a) The broker will not, without written authorization, disclose to the other party that the Seller will accept a price or terms other than
20. stated in the listing or that the Buyer will accept a price or terms other than offered.
21. b) There will be conflicts in the duties of loyalty, obedience, disclosure and confidentiality. Disclosure of confidential information may
22. be made only with written authorization.
23. Regardless of who the Broker represents in the transaction, the Broker shall exercise reasonable skill and care in the performance of the
24. Broker's duties and shall be truthful and honest to both the Buyer and Seller and shall disclose all known facts which materially and adversely
25. affect the consideration to be paid by any party. Pursuant to A.R.S. §32-2156, Sellers, Lessors and Brokers are not obligated to disclose that
26. a property is or has been: (1) the site of a natural death, suicide, homicide, or any crime classified as a felony; (2) owned or occupied by a
27. person exposed to HIV, or diagnosed as having AIDS or any other disease not known to be transmitted through common occupancy of real
28. estate; or (3) located in the vicinity of a sex offender. Sellers or Sellers' representatives may not treat the existence, terms, or conditions of
29. offers as confidential unless there is a confidentiality agreement between the parties.

30. **THE DUTIES OF THE BROKER IN A REAL ESTATE TRANSACTION DO NOT RELIEVE THE SELLER OR THE BUYER FROM THE**
31. **RESPONSIBILITY TO PROTECT THEIR OWN INTERESTS. THE SELLER AND THE BUYER SHOULD CAREFULLY READ ALL**
32. **AGREEMENTS TO INSURE THAT THE DOCUMENTS ADEQUATELY EXPRESS THEIR UNDERSTANDING OF THE TRANSACTION.**

## ELECTION

33. **Buyer or Tenant Election** (Complete this section only if you are the Buyer.) The undersigned elects to have the Broker (check any that apply):
34. [X] represent the Buyer as Buyer's Broker.
35. [ ] represent the Seller as Seller's Broker.
36. [X] show Buyer properties listed with Broker's firm and Buyer agrees that Broker shall act as agent for both Buyer and Seller provided that
37. the Seller consents to limited representation. In the event of a purchase, Buyer's and Seller's informed consent should be
38. acknowledged in a separate writing other than the purchase contract.

39. **Seller or Landlord Election** (Complete this section only if you are the Seller.) The undersigned elects to have the Broker (check any that apply):
40. [ ] represent the Buyer as Buyer's Broker.
41. [ ] represent the Seller as Seller's Broker.
42. [ ] show Seller's property to Buyers represented by Broker's firm and Seller agrees that Broker shall act as agent for both Seller and
43. Buyer provided that Buyer consents to the limited representation. In the event of a purchase, Buyer's and Seller's informed consent
44. should be acknowledged in a separate writing other than the purchase contract.

45. The undersigned [ ] Buyer(s) or [ ] Seller(s) acknowledge that this document is a disclosure of duties. This document is not an employment agreement.

46. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE

47. _____ _____
    PRINT NAME                        PRINT NAME

48. _____ 3/16/2009  _____ 3/16/09
    SIGNED                  MO·DA·YR   SIGNED                   MO·DA·YR

Real Estate Agency Disclosure and Election • Updated: January 2009 • Copyright © 2009 Arizona Association of REALTORS®. All rights reserved.

Windermere Majestic Rim Properties, E. Highway 260 Payson, AZ 85541    Phone: (928) 474-2657    Fax: (928) 474-1722    Dave & Cecilia
Maria Cohen    Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com





# Windermere Majestic Rim Properties
# SHORT SALE ADDENDUM
## TO THE RESIDENTIAL RESALE REAL ESTATE PURCHASE CONTRACT

*The printed portion of this contract has been approved by the ARIZONA ASSOCIATION OF REALTORS® ("AAR") This is intended to be a binding contract. No representation is made as to the legal validity or adequacy of any provision or the tax consequences thereof. If you desire legal, tax or other professional advice, consult your attorney, tax advisor, insurance agent or professional consultant.*

1. SELLER: __Ryan Rippy, Brande Rippy__
2. BUYER: __David J. West, Virginia Cecilia West__
3. PREMISES: __202 S. Arroyo Dr., Payson, AZ 85541__
4. DATE: __March 16, 2009__

5. The following additional terms and conditions are hereby included as part of the Contract between Seller and Buyer for the above
6. referenced Premises. Delivery of all notices and documentation shall be deemed delivered and received when sent as required
7. by Section 8m of the Contract.

8. **CONTINGENT UPON ACCEPTABLE SHORT SALE AGREEMENT**

9. Buyer and Seller acknowledge that there is more debt owing against the Premises than the purchase price. Therefore, this
10. Contract is contingent upon an agreement between the Seller and Seller's creditor(s), acceptable to both, to sell the Premises
11. for less than the loan amount(s) ("short sale"). Buyer and Seller acknowledge that it may take weeks or months to obtain
12. creditor(s) approval of a short sale.

13. Nothing shall limit a Seller from accepting subsequent offers from subsequent buyer(s) and submitting the back-up contract(s) to
14. Seller's creditor(s) for consideration. All parties understand and agree that Seller's creditor(s) may elect to allow the Seller to sell
15. the Premises only to the holder of the Contract with terms and conditions most acceptable to creditor(s).

16. **DOCUMENTATION TO CREDITOR(S)**

17. Seller shall submit to creditor(s) a copy of this Contract, including this and other Addenda, and any other documentation required
18. by the creditor(s) for approval of this sale within five (5) days after Contract acceptance. Seller agrees to diligently work to obtain
19. short sale approval and will promptly provide the creditor(s) with all additional documentation required, including an appraisal, at
20. Seller's expense, if required. Seller instructs creditor(s) to provide approval status updates to Broker(s) and Buyer upon request.

21. **TERMS UPON ACCEPTABLE SHORT SALE AGREEMENT**

22. **Agreement Notice:** If Seller and Seller's creditors enter into a short sale agreement, the Seller shall immediately deliver
23. notice to Buyer ("Agreement Notice").
24. **Time Periods:** The date of Seller's delivery of the Short Sale Agreement Notice to Buyer shall be deemed the date of Contract
25. acceptance for purposes of all applicable Contract time periods.
26. **Escrow and Earnest Money:** Buyer shall promptly open Escrow and deposit Earnest Money as described in the Contract
27. upon receipt of Agreement Notice.
28. **Loan Costs:** Buyer will be responsible for all Buyers' Loan Costs.
29. **Seller Warranties:** Buyer hereby waives Seller's warranties as set forth in Lines 163-166 of Section 5a of the Contract that all list-
30. ed items shall be in working condition at the earlier of possession or COE. However, Seller warrants and shall maintain and repair
31. the Premises so that, pursuant to lines 167-168 of the Contract, at the earlier of possession or COE, the Premises, including all
32. heating, cooling, mechanical, plumbing, and electrical systems (including swimming pool and/or spa, motors, filter systems, cleaning
33. systems, and heaters, if any), free-standing range/oven, built-in appliances and additional existing personal property included in
34. the sale, will be in substantially the same condition as on the date of Contract acceptance and all personal property not included
35. in the sale and all debris will be removed from the Premises.
36. **Close of Escrow:** Close of Escrow shall occur thirty (30) days or ____N/A____ days after delivery of Agreement Notice.
37. **Creditor Requirements:** Buyer and Seller agree to cooperate with Creditor(s) and sign additional Creditor disclosure(s) or
38. execute additional addendum(s) required by Creditor(s) as a condition of approval of the short sale, provided that Buyer and
39. Seller incur no additional cost or liability.

40. **BUYER CANCELLATION**

41. Buyer may unilaterally cancel this Contract by notice to Seller at any time before receipt of a short sale Agreement Notice from Seller.

Initials: SELLER / SELLER   ARIZONA REALTORS SSARPC 8/08   Initials: BUYER / BUYER

PAGE 1 of 2

42. _____ **LEGAL AND TAX ADVICE** _____
43. Seller acknowledges that Broker is not qualified to provide financial, legal, or tax advice regarding a short sale
44. transaction. Therefore, the Seller is advised to obtain professional tax advice and consult independent legal
45. counsel immediately regarding the tax implications and advisability of entering into a short sale agreement.
46. _____
    (SELLER INITIALS)

47. _____ **UNFULLFILLED CONTINGENCY** _____
48. In the event that Seller and Seller's creditor(s) are unable to reach a short sale agreement acceptable to both, at the sales price
49. contained herein, Seller shall promptly notify Buyer of same, and the Contract shall be deemed cancelled due to the unfulfilled
50. short sale contingency. If applicable, Buyer shall be entitled to a return of any Earnest Money.

51. _____ **OTHER TERMS AND CONDITIONS** _____
52. _____
53. _____
54. _____
55. _____
56. _____
57. _____
58. _____
59. _____
60. _____
61. _____
62. _____
63. _____
64. _____
65. _____
66. _____
67. _____
68. _____
69. _____
70. _____
71. _____
72. _____
73. _____
74. _____
75. _____

76. In the event that any provision contained in this Addendum conflicts in whole or in part with any terms contained in the Contract,
77. the provisions of this Addendum shall prevail and the conflicting terms are hereby considered deleted and expressly waived by
78. both Buyer and Seller.

79. _____  3/16/09    _____  3/6/09
    BUYER SIGNATURE         MO/DA/YR   BUYER SIGNATURE         MO/DA/YR
    David J. West                      Virginia Cecilia West

80. _____  3/25/09   _____  3/25/09
    SELLER SIGNATURE        MO/DA/YR   SELLER SIGNATURE        MO/DA/YR
    Ryan Rippy                         Brande Rippy

Initials: ____/____          **ARIZONA**          Initials: ____/____
         SELLER SELLER       **REALTORS** SSARPC 8/08         BUYER BUYER

# EXHIBIT "B"

# National City Mortgage
## 3232 Newmark Drive
## Miamisburg, Ohio 45342

May 29, 2009

To: RYAN RIPPY
   BRANDE RIPPY

RE: 202 S ARROYO DR
   PAYSON AZ 85541

Mr. & Mrs. Rippy,

This letter is to verify that the sort sale offer on the above referenced property has been **APPROVED** by the Investor (E*Trade). This approval is subject to the following conditions and guidelines.

The short sale for the referenced loan(s) # 4832971 / SBO# 126528 has been conditionally approved for no less than $315,166.26 due to E*Trade (amounts over do not require additional approval). In order to complete settlement/escrow, the following conditions must be met prior to closing.

1) Seller will not receive any reimbursements, refunds or credits under any circumstances;
2) Certified funds or wire is to be received by July 17, 2009 ; additional time is subject to approval.
3) No more than $0.00 will be disbursed to jr. lienholder(s) for release of lien(s);
4) No more than 5% realtor commission will be paid with this transaction;
5) Additional proceeds, if any, are to be applied to the net amount due to E*Trade;
6) Release deed of trust or mortgage as required for closing and release note as we agree not to pursue the collection of any deficiency balance after closing. ;

7) Final HUD1 and Servicer Expenses are due to Etrade within 5 days of the funds being transmitted from Settlement Company to Servicer – email to reo@etrade.com or fax to 571-227-7417.

If you have any additional questions please give me a call at 937-910-4612.

Yours truly,

*Douglas Leppich*

Douglas Leppich

Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

County of Gila

[Type of Recording Jurisdiction]           [Name of Recording Jurisdiction]

LOT 61, WILDWOOD, ACCORDING TO MAP NO. 595, RECORDS OF GILA COUNTY, ARIZONA.

Parcel ID Number: 304-09-068                    which currently has the address of
202 S ARROYO DR,                                                              [Street]
PAYSON                                          [City], Arizona  85541    [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

VMP-6(AZ) (0206)                    Page 3 of 15                    Form 3003 1/01 (rev. 6/02)